IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| GENARO ESPARZA AND | § | |
| SAN JUANITA ESPARZA, | § | |
| *Plaintiffs*, | § | |
| | § | |
| VS. | § | Civil Action No.   5:15-cv-00109 |
| | § | |
| STATE FARM LLOYDS AND | § | |
| JAY OSPINA, | § | |
| *Defendants*. | § | |
| | § | |

**EXHIBIT 1 TO INDEX OF MATTERS BEING FILED**

Defendants, State Farm Lloyds and Jay Ospina ("Defendants") submit this *Exhibit 1 to Index of Matters Being Filed* and attaches the following items:

A.  Plaintiffs' Original Petition;

B.  Plaintiffs' Request for Disclosure to Defendant State Farm Lloyds;

C.  Plaintiffs' Request for Production to Defendant State Farm Lloyds;

Filed
4/27/2015 4:58:26 PM
Esther Degollado
District Clerk
Webb District
2015CVF001414D2

CAUSE NO. _____

| | | |
|---|---|---|
| **GENARO ESPARZA and** | § | **IN THE DISTRICT COURT** |
| **SAN JUANITA ESPARZA** | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| VS. | § | **___ TH JUDICIAL DISTRICT** |
| | § | |
| **STATE FARM LLOYDS** | § | |
| **and JAY OSPINA** | § | |
| | § | |
| *Defendants.* | § | **WEBB COUNTY, TEXAS** |

## PLAINTIFFS' ORIGINAL PETITION

### TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW PLAINTIFFS GENARO ESPARZA and SAN JUANITA ESPARZA ("PLAINTIFFS"), and file their Original Petition, complaining of STATE FARM LLOYDS ("STATE FARM") and JAY OSPINA ("OSPINA") (collectively referred to as "Defendants"), and allege and state as follows:

### A. DISCOVERY CONTROL PLAN

1.     Plaintiffs intend for discovery in this action be conducted under Level 2, in accordance with Tex. R. Civ. P. 190.3.

### B. PARTIES

2.     Plaintiffs, GENARO ESPARZA and SAN JUANITA ESPARZA ("PLAINTIFFS"), are individuals residing in a Webb County, Texas at 105 Century Drive E., Laredo, Texas 78046.

3.     Defendant, STATE FARM LLOYDS ("STATE FARM"), is a domestic insurance carrier authorized to conduct insurance business in Texas, whose home office is located in Collin County, and may be served with process by serving its designated attorney for service, Rendi

Plaintiffs' Original Petition

A True copy of the original I certify the ____ day of _____ 20 ___
ESTHER DEGOLLADO
Clerk of the District Courts and
County Courts of Laredo Webb County Texas
By _____ Deputy

Black c/o State Farm, in Collin County at 17301 Preston Road, Dallas, Texas 75252-5727.

4.      Defendant, JAY OSPINA ("OSPINA"), is an individual residing in and domiciled in Texas who is engaged in the business of adjusting insurance claims in the State of Texas. This Defendant may be served with process by a process server at his place of residence or place of business, or wherever he may be found.

## C. JURISDICTION

5.      This Court has subject-matter jurisdiction over the lawsuit because the amount in controversy exceeds this Court's minimum jurisdictional requirements.

6.      This Court has jurisdiction over Defendant STATE FARM because this Defendant is a domestic insurance company that engages in the business of insurance in the State of Texas, and Plaintiffs' causes of action arise out of this Defendant's business activities in the State of Texas.

7.      This Court has jurisdiction over Defendant OSPINA because this Defendant engages in the business of adjusting insurance claims in the State of Texas, and Plaintiffs' causes of action arises out of this Defendant's business activities in the State of Texas.

## D. VENUE

8.      Venue is proper in Webb County, Texas, because the insured property is situated in Webb County, Texas. Tex. Civ. Prac. & Rem. Code §15.032.

## E. CONDITIONS PRECEDENT

9.      All conditions precedent to recovery have been performed, waived, or have occurred.

## F. AGENCY AND *RESPONDENT SUPERIOR*

10.     Whenever in this petition it is alleged that STATE FARM did any act or

omission, it is meant that STATE FARM itself or its agents, officers, servants, employees, or representatives did such act or omission, and it was done with the full authorization or ratification of STATE FARM or done in the normal routine, course and scope of the agency or employment of STATE FARM or its agents, officers, servants, employees, or representatives.

### G. FACTS

11.     Plaintiffs are the owners of Texas Insurance Policy No. 83GA90731 (hereinafter referred to as "the Policy"), which was issued by Defendant STATE FARM.

12.     Plaintiffs own the insured residential property specifically located at 105 Century Drive E., Laredo, Texas 78046 (hereinafter referred to as "the Property").

13.     Defendant STATE FARM sold the Policy insuring the Property to Plaintiffs.

14.     On or about May 9, 2014, a severe hailstorm and/or windstorm struck Webb County, Texas, causing severe damage to homes and businesses throughout the area, including Plaintiffs' Property ("the Storm").   Specifically, Plaintiffs' roof sustained extensive damage during the Storm.   Water intrusion through the roof caused extensive damage throughout the interior of the Property including, but not limited to, the interior ceilings, walls, and flooring of the Property.  Plaintiffs' Property also sustained substantial exterior damage during the Storm.

15.     After the Storm, Plaintiffs filed a claim (Claim No. 53539X863) with their insurance company, Defendant STATE FARM, for the damages to the Property caused by the Storm.

16.     Plaintiffs submitted a claim to Defendant STATE FARM against the Policy for Roof Damage, Structural Damage, Water Damage, and Windstorm and Hail Damage the Property sustained as a result of the Storm.

17.     Plaintiffs requested that Defendant STATE FARM cover the cost of repairs to the

Property pursuant to the Policy, including but not limited to: repair and/or replacement of the roof and repair of the interior and exterior damages to the Property.

18.     Defendant OSPINA was the adjuster assigned by STATE FARM to adjust the claim. OSPINA was improperly trained and failed to perform a thorough investigation of Plaintiffs' Hail and Wind Damage Property claim and intentionally, knowingly and deceptively, with malice, set out to deny all or a portion of the Plaintiffs' Hail and Wind Damage Property claim by engaging in false, misleading, deceptive and fraudulent acts and practices of omission and commission which ultimately resulted in Plaintiffs being denied the benefit of the bargain and loss payments due under the terms and conditions of the Policy of Insurance issued by STATE FARM.

19.     OSPINA' adjustment of the claim fraudulently, wrongfully, deceptively and negligently denied the claim and undervalued the cost of repair and/or replacement of covered items of damage to the insured Property in the claim report, which resulted in Plaintiffs receiving nothing from STATE FARM to cover the losses sustained by Plaintiffs to repair and/or replace the insured Property damaged by the Storm, excluding the amounts of the deductible and non-recoverable depreciation assessed pursuant to the terms and conditions of the Policy for which Plaintiffs were responsible.

20.     As a result thereof, on or about November 13, 2014, or shortly thereafter, Plaintiffs received a claim check in the amount of $7,012.97 from Defendant STATE FARM, which was wholly insufficient to repair and/or replace the covered damages to the Property resulting from the Storm. Plaintiffs' actual covered damage to the Property as a result of the Storm exceeded the sum of $66,573.77, which is continuing to increase each day that STATE

FARM fails and refuses to pay the Plaintiff's claim due to increases in the costs of labor and materials.

21.     STATE FARM and its adjuster, OSPINA, wrongfully denied Plaintiffs' claim for repairs of the insured Property, even though the Policy provided coverage for losses such as those suffered by Plaintiffs.

22.     Based upon information and belief, Defendant OSPINA was compensated on a per claim adjusted basis and/or other combination of compensation tied to the quantity of claims adjusted.  OSPINA was therefore motivated to conduct an inadequate and substandard claim investigation of Plaintiffs' Hail and Wind damage loss to Plaintiffs' Property resulting from the Storm in order to increase the number of claims adjusted by him for his personal pecuniary benefit, as indicated below in sub-paragraphs (a) thru (g).  Defendant OSPINA was negligent in violating STATE FARM'S written policies as they relate to claims handling practices by failing to fully investigate and document all damage to Plaintiffs' insured Property and by failing to fully investigate and evaluate the Plaintiffs' insured loss based upon local replacement and/or repair costs for each item of damage, as indicated below in sub-paragraphs (a) thru (g). Additionally, based upon information and belief and the acts and practices actually employed by Defendant OSPINA, OSPINA held a personal bias in favor of insurance companies and prejudice against insurance claimants generally, and more specifically towards Plaintiffs herein as specifically demonstrated below in sub-paragraphs (a) thru (b).  Defendant OSPINA, intentionally, knowingly and fraudulently, with malice, engaged in the following specified acts and practices, among others stated herein, in violation of and in breach of the adjuster's moral, ethical and legal duties to Plaintiffs as a licensed claims adjuster, which was a producing and

proximate cause of the damages and losses sustained herein by Plaintiffs resulting in the denial and/or underpayment of Plaintiffs claim; to wit:

a)    OSPINA' investigation and inspection for damages to the Plaintiffs' Property was performed in less than thirty (30) minutes, which was an insufficient time period to perform an adequate assessment of the damage to the Property resulting from the Storm;

b)    OSPINA failed to and/or refused to properly interview the Plaintiffs to ascertain other damages that were not readily apparent or would not be readily apparent to an individual unfamiliar with the Property in its pre-Storm condition;

c)    OSPINA refused to and did not inspect for hidden or latent damage resulting to Plaintiffs' Property that is customarily found to exist on property that has gone through a hail and wind storm of the severity of that which occurred in Webb County on May 9, 2014;

d)    OSPINA failed and refused to include the usual and customary charges for costs of materials, supplies, labor and contractor's overhead and profit charged by contractors in the area for the repair, replacement and restoration of the Plaintiffs' Property damaged by the Storm;

e)    OSPINA performed only a cursory inspection of the roof and exterior, and interior of the insured Property; and failed to assess, estimate and include all covered damage to the Property in the report and adjustment of loss to STATE FARM for exterior and interior water damages and/or note other damages existing to the Property at the time of inspection such as ceilings

and walls that were sustained as a result of the Storm;

f)     OSPINA, during his investigation of the Plaintiffs' claim, failed to include all damages sustained to the Property by the Storm, thus submitting an inaccurate and false report of Plaintiffs' covered Storm Property losses to STATE FARM;

g)     OSPINA fraudulently represented to Plaintiffs verbally and by conduct, in preparing an inadequate, incomplete and undervalued estimate of the cost of replacement and/or repair of Storm damage to Plaintiffs' Property, that the majority of the damages to the Property were not severe or Storm related; and that most, if not all, of the covered damages found to exist upon observation of Plaintiffs' Property, were not covered by the Policy, but were due to normal wear and tear or the result of other causes, when in fact such damage was Storm related and should have been included in OSPINA' report to STATE FARM.

23.     Defendant STATE FARM failed to thoroughly review the fraudulent and inaccurate assessment of the claim by OSPINA, and ultimately approved OSPINA' inaccurate report of the damages to the Property.

24.     The mishandling of Plaintiffs' claim has also caused a delay in the ability to fully repair the Property, which has resulted in additional damages. To date, Plaintiffs have yet to receive the full payment to which they are entitled under the Policy and have not been able to fully repair or replace the damage to the insured Property.

25.     Defendant OSPINA is individually legally liable to Plaintiffs for the losses and damages sustained as a direct, producing and proximate cause of the acts of omission and

commission detailed herein and above, for which Plaintiffs here now sue for the recovery of monetary damages within the jurisdictional limits of this court against said Defendant.

26.     In the alternative, without waiving the foregoing, and based upon information and belief, STATE FARM, in hiring adjusters and claims representatives, was responsible to and had a legal duty to ensure that they hired and retained competent, qualified and ethical licensed adjusters and claims representatives who would deal fairly, honestly and in good faith with the policy holders of STATE FARM in the practice of insurance claims handling.  STATE FARM breached such duties in connection with Plaintiffs' Property Damage claim resulting from the Storm by failing to properly train, direct and oversee the claims handling practices employed by OSPINA.

27.     At all times material herein, STATE FARM had a non-delegable contractual legal duty to timely, fairly and in good faith fully investigate, process, adjust, timely pay and re-adjust claims for all covered losses sustained by its policy holders as a result of the Storm, including Plaintiffs.  STATE FARM represented that it would do so in advertising mediums throughout the State of Texas and specifically in writing to its policy holders as an inducement for them to purchase and continue to renew homeowners and business property insurance with STATE FARM.  Due to a lack of knowledge and understanding of the insurance claims handling process, knowledge of construction costs and insurance policy coverage issues relating to storm related property losses, Plaintiffs relied on such representations to their detriment, purchased the Policy from STATE FARM and accepted the estimate of damages from OSPINA which, unknown to Plaintiffs, included denial and underpayment of covered losses and damages sustained in the Storm.  STATE FARM made such representations knowing they were false and with the intent that Plaintiffs rely on such representations. STATE FARM, having breached its legal duty to

timely, fairly and in good faith investigate, process, adjust and pay for all covered losses sustained by Plaintiffs herein, is responsible for the acts of omission and commission set forth herein and above in connection with OSPINA' investigation and claims handling practices employed to deny and/or underpay the covered losses and damages sustained by Plaintiffs as a result of the Storm.

28.     STATE FARM distributed training, educational, and instructional materials to the field claim representatives and adjusters such as OSPINA; held meetings and issued directives to the field instructing how STATE FARM wanted the hail losses like Plaintiffs' to be handled. STATE FARM communicated and disseminated claims handling practices and methodologies to its field adjusters such as OSPINA of 1) "Quantity over Quality", 2) Minimization of damage estimates, 3) Under-valuation of reported replacement and/or repair estimates, and 4) Omission of probable covered damages in the report to the Property from the Storm.  These policies served to fuel and motivate OSPINA' individual pre-disposition of bias in favor of insurance companies and prejudice towards claimants and the resulting losses sustained by Plaintiffs as set forth herein.

29.     Additionally, STATE FARM and OSPINA, collectively and individually, conspired to and did breach their duty of good faith, fair dealing and timely payment of all covered losses owed to Plaintiffs resulting from the Storm as set forth below.

30.     Defendant OSPINA conducted a substandard and incomplete inspection of Plaintiffs' Property.  Plaintiffs' damages were noted in an inaccurate report and/or estimate of Plaintiffs' Storm damages, which failed to include many of the damages noted upon inspection and grossly underestimated and undervalued those damages that were included.

31.     Defendant STATE FARM failed to thoroughly review the assessment of the claim

by Defendant OSPINA and ultimately approved OSPINA' inaccurate report of the damages.  As a result, Plaintiffs were denied payment on their claim and have suffered damages.

32.    Together, Defendants set out to deny and/or underpay properly covered damages. As a result of Defendants unreasonable investigation, including their under-scoping and incomplete inspection of Plaintiffs' Storm damages during their investigation(s) and failure to provide full coverage for the damages sustained by Plaintiffs, Plaintiffs' claim was improperly adjusted, and Plaintiffs were denied adequate and sufficient payment to repair the Property and have suffered damages.

33.    On or about November 11, 2014, OSPINA intentionally, knowingly and as directed by STATE FARM, conducted a substandard investigation of Plaintiffs' claim with the intent to underpay or deny all or a portion of the claim for the benefit of STATE FARM, which resulted in losses and damages to Plaintiffs' Property.  This practice of wrongfully denying and/or underpaying claims of STATE FARM policy holders for covered losses sustained by them in the Storm by refusing to fully inspect the Property for damage, misrepresenting coverage, the scope of coverage and loss, under-estimating repair costs, denying claims for covered losses underpaying covered losses of its insured policy holders, was specifically employed by OSPINA in connection with the handling of the claim for damages and losses sustained by Plaintiffs as a result of the Storm.

34.    Defendant OSPINA, engaged in a claims processing handling practice designed by STATE FARM to reduce the overall loss payments STATE FARM was obligated contractually to pay policyholders as a whole in the Webb County area for the covered losses resulting from the Storm.  STATE FARM directed its adjusters and claim representatives to misrepresent coverage, the scope of coverage and loss, under-estimate repair costs, deny claims

---

for covered losses, underpay covered losses of its insured policy holders, refuse to inspect portions of the properties damaged, and claim that damage to the property found to exist was due to normal wear and tear or was the result of other causes that pre-existed the Storm as a basis for not including those damages in the report. Plaintiffs' claim, as demonstrated herein, is typical of the deceptive acts and practices and unfair claims settlement practices intentionally and knowingly employed by Defendants STATE FARM and OSPINA in connection with the handling of Plaintiffs' claim.

35.    As detailed in the paragraphs below, Defendant STATE FARM wrongfully denied Plaintiffs' claim for repairs of the Property, even though the Policy provided coverage for losses such as those suffered by Plaintiffs. Furthermore, Defendant STATE FARM underpaid some of the Plaintiffs' claims by not providing full coverage for the damages sustained by Plaintiffs, as well as under-scoping the damages during its investigation.

36.    To date, Defendant STATE FARM continues to delay in the payment for the damages to the Property. As such, Plaintiffs have not been paid in full for the damages to their Property.

37.    Defendant STATE FARM failed to perform its contractual duties to adequately compensate Plaintiffs under the terms of the Policy. Specifically, it refused to pay the full proceeds of the Policy, although due demand was made for proceeds to be paid in an amount sufficient to cover the damaged Property, and all conditions precedent to recovery upon the Policy had been carried out and accomplished by Plaintiffs. Defendant STATE FARM'S conduct constitutes a breach of the insurance contract between STATE FARM and Plaintiffs.

38.    Defendants misrepresented to Plaintiffs that the damage to the Property was not covered under the Policy, even though the damage was caused by a covered occurrence.

---

Defendants' conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §§541.060(a)(1).

39.     Defendants failed to make an attempt to settle Plaintiffs' claim in a fair manner, although they were aware of their liability to Plaintiffs under the Policy. Defendants' conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060(a)(2)(A).

40.     Defendants failed to explain to Plaintiffs the reasons for their offer of an inadequate settlement. Specifically, Defendants failed to offer Plaintiffs adequate compensation, without any explanation why full payment was not being made. Furthermore, Defendants did not communicate that any future settlements of payments would be forthcoming to pay for the entire losses covered under the Policy, nor did they provide any explanation for the failure to adequately settle Plaintiffs' claim. Defendants' conduct is a violation of the Texas Insurance Code, Unfair Settlement Practices, TEX. INS. CODE §541.060(a)(3).

41.     Defendants failed to affirm or deny coverage of Plaintiffs' claim within a reasonable time. Specifically, Plaintiffs did not receive timely indication of acceptance or rejection, regarding the full and entire claim, in writing from Defendants. Defendants' conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060(a)(4).

42.     Defendants refused to fully compensate Plaintiffs, under the terms of the Policy, even though Defendants failed to conduct a reasonable investigation. Specifically, Defendants performed an incomplete and outcome-oriented investigation of Plaintiffs' claim, which resulted in a biased, unfair, and inequitable evaluation of Plaintiffs' losses on the Property. Defendants' conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX.

INS. CODE §541.060(a)(7).

43.    Defendant STATE FARM failed to meet its obligations under the Texas Insurance Code regarding timely acknowledging Plaintiffs' claim, beginning an investigation of Plaintiffs' claim, and requesting all information reasonably necessary to investigate Plaintiffs' claim, within the statutorily mandated time of receiving notice of Plaintiffs' claim.  STATE FARM'S conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. TEX. INS. CODE §542.055.

44.    Defendant STATE FARM failed to accept or deny Plaintiffs' full and entire claim within the statutorily mandated time of receiving all necessary information.  STATE FARM'S conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims.  TEX. INS. CODE §542.056.

45.    Defendant STATE FARM failed to meet its obligations under the Texas Insurance Code regarding payment of claim without delay.  Specifically, it has delayed full payment of Plaintiffs' claim longer than allowed and, to date, Plaintiffs have not received full payment for the claim.  STATE FARM'S conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. TEX. INS. CODE §542.058.

46.    From and after the time Plaintiffs' claim was presented to Defendant STATE FARM, the liability of STATE FARM to pay the full claim in accordance with the terms of the Policy was reasonably clear.  However, STATE FARM has refused to pay Plaintiffs in full, despite there being no basis whatsoever on which a reasonable insurance company would have relied to deny the full payment.  STATE FARM'S conduct constitutes a breach of the common law duty of good faith and fair dealing.

47.    Defendants knowingly or recklessly made false representations, as described

above, as to material facts and/or knowingly concealed all or part of material information from Plaintiffs.

48.     As a result of Defendants wrongful acts and omissions, Plaintiffs were forced to retain the professional services of the attorney and law firm who is representing them with respect to these causes of action.

## H. CAUSES OF ACTION:

### CAUSES OF ACTION AGAINST DEFENDANT JAY OSPINA

### NONCOMPLIANCE WITH TEXAS INSURANCE CODE: UNFAIR SETTLEMENT PRACTICES

49.     Plaintiffs replead all of the material allegations above set forth in Paragraphs 1-48 and incorporate the same herein by this reference as if here set forth in full.

50.     Defendant STATE FARM assigned Defendant OSPINA to adjust the claim. Defendant OSPINA was inadequately and improperly trained to handle claims of this nature and performed an unreasonable investigation of Plaintiffs' damages.   During the investigation, OSPINA failed to properly assess Plaintiffs' Storm damages and omitted properly covered damages from his reports and/or estimates of the damages, including all of Plaintiffs' interior and exterior damages. In addition, the damages that OSPINA did include in his estimates and reports were grossly undervalued and underestimated.   As a result, Plaintiffs claim was denied and have suffered damages.

51.     Defendant OSPINA' conduct constitutes multiple violations of the Texas Insurance Code, Unfair Settlement Practices.   TEX. INS. CODE §541.060(a).   All violations under this article are made actionable by TEX. INS. CODE §541.151.

52.     Defendant OSPINA is individually liable for his unfair and deceptive acts, despite

the fact he was acting on behalf of STATE FARM, because he is a "person" as defined by TEX. INS. CODE §541.002(2). The term "person" is defined as "any individual, corporation, association, partnership, reciprocal or interinsurance exchange, Lloyds plan, fraternal benefit society, or other legal entity engaged in the business of insurance, including an agent, broker, adjuster or life and health insurance counselor." TEX. INS. CODE §541.002(2). (See also *Liberty Mutual Insurance Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482, 484 (Tex. 1998) (holding an insurance company employee to be a "person" for the purpose of bringing a cause of action against him or her under the Texas Insurance Code and subjecting him or her to individual liability)).

53.    Falsehoods and misrepresentations may be communicated by actions as well as by the spoken word; therefore, deceptive conduct is equivalent to a verbal representation. Defendants' misrepresentations by means of deceptive conduct include, but are not limited to: (1) failing to conduct a reasonable inspection and investigation of Plaintiffs' damages; (2) stating that Plaintiffs' damages were less severe than they in fact were; (3) using their own statements about the non-severity of the damage as a basis for denying properly covered damages and/or underpaying damages; and (4) failing to provide an adequate explanation for the inadequate compensation Plaintiffs received. Defendant OSPINA' unfair settlement practice, as described above, of misrepresenting to Plaintiffs material facts relating to the coverage at issue, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(1).

54.    Defendant OSPINA failed to make an attempt to settle Plaintiffs' claim in a fair manner, although he was aware of Defendant's liability to Plaintiffs under the Policy. OSPINA' conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX.

INS. CODE §541.060(a)(2)(A).

55.     Defendant OSPINA failed to explain to Plaintiffs the reasons for his offer of an inadequate settlement.   Specifically, Defendant OSPINA failed to offer Plaintiffs adequate compensation without any explanation as to why full payment was not being made. Furthermore, Defendants did not communicate that any future settlements or payments would be forthcoming to pay for the entire losses covered under the Policy, nor did they provide any explanation for the failure to adequately settle Plaintiffs' claim. The unfair settlement practice of Defendant OSPINA as described above, of failing to promptly provide Plaintiffs with a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for the offer of a compromise settlement of Plaintiffs' claim, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(3).

56.     Defendant OSPINA' unfair settlement practice, as described above, of failing within a reasonable time to affirm or deny coverage of the claim to Plaintiffs, or to submit a reservation of rights to Plaintiffs, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(4).

57.     Defendant OSPINA did not properly inspect the Property and failed to account for and/or undervalued many of Plaintiffs' exterior and interior damages.   Defendant OSPINA' unfair settlement practice, as described above, of refusing to pay Plaintiffs' claim without conducting a reasonable investigation, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(7).

### CAUSES OF ACTION AGAINST DEFENDANT
### STATE FARM LLOYDS

58.     Plaintiffs replead all of the material allegations above set forth in Paragraphs 1-57

---

and incorporate the same herein by this reference as if here set forth in full.

59.     Defendant STATE FARM is liable to Plaintiffs for intentional breach of contract, as well as intentional violations of the Texas Insurance Code, and intentional breach of the common law duty of good faith and fair dealing.

## BREACH OF CONTRACT

60.     Plaintiffs replead all of the material allegations above set forth in Paragraphs 1-59 and incorporate the same herein by this reference as if here set forth in full.

61.     Defendant STATE FARM'S conduct constitutes a breach of the insurance contract made between STATE FARM and Plaintiffs.

62.     Defendant STATE FARM'S failure and/or refusal, as described above, to pay the adequate compensation as it is obligated to do under the terms of the Policy in question, and under the laws of the State of Texas, constitutes a breach of STATE FARM'S insurance contract with Plaintiffs.

## NONCOMPLIANCE WITH TEXAS INSURANCE CODE: UNFAIR SETTLEMENT PRACTICES

63.     Plaintiffs replead all of the material allegations above set forth in Paragraphs 1-62 and incorporate the same herein by this reference as if here set forth in full.

64.     Defendant STATE FARM'S conduct constitutes multiple violations of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060(a). All violations under this article are made actionable by TEX. INS. CODE §541.151.

65.     Defendant STATE FARM'S unfair settlement practice, as described above, of misrepresenting to Plaintiffs material facts relating to the coverage at issue, constitutes an unfair method of compensation and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(1).

66.     Defendant STATE FARM'S unfair settlement practice, as described above, of failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim, even though STATE FARM'S liability under the Policy was reasonably clear, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(2)(A).

67.     Defendant STATE FARM'S unfair settlement practice, as described above, of failing to promptly provide Plaintiffs with a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for its offer of a compromise settlement of the claim, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(3).

68.     Defendant STATE FARM'S unfair settlement practice, as described above, of failing within a reasonable time to affirm or deny coverage of the claim to Plaintiffs, or to submit a reservation of rights to Plaintiffs, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance.  TEX. INS. CODE §541.060(a)(4).

69.     Defendant STATE FARM'S unfair settlement practice, as described above, of refusing to pay Plaintiffs' claim without conducting a reasonable investigation, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance.  TEX. INS. CODE §541.060(a)(7).

## NONCOMPLIANCE WITH TEXAS INSURANCE CODE: THE PROMPT PAYMENT OF CLAIMS

70.     Plaintiffs replead all of the material allegations above set forth in Paragraphs 1-69 and incorporate the same herein by this reference as if here set forth in full.

71.     Defendant STATE FARM'S conduct constitutes multiple violations of the Texas Insurance Code, Prompt Payment of Claims.  All violations made under this article are made

actionable by TEX. INS. CODE §542.060.

72.    Defendant STATE FARM'S failure to acknowledge receipt of Plaintiffs' claim, commence investigation of the claim, and request from Plaintiffs all items, statements, and forms that it reasonably believed would be required within the applicable time constraints, as described above, constitutes a non-prompt payment of claims and a violation of TEX. INS. CODE §542.055.

73.    Defendant STATE FARM'S failure to notify Plaintiffs in writing of its acceptance or rejection of the claim within the applicable time constraints, constitutes a non-prompt payment of the claim. TEX. INS. CODE §542.056.

74.    Defendant STATE FARM'S delay of the payment of Plaintiffs' claim following its receipt of all items, statements, and forms reasonably requested and required, longer than the amount of time provided for, as described above, constitutes a non-prompt payment of the claim. TEX. INS. CODE §542.058.

### RESPONSIBILITY FOR ACTS OF AGENTS AND RATIFICATION OF ACTS

75.    Defendant OSPINA, whose conduct is referenced herein and above, is an agent of STATE FARM based upon his acts of commission and omission in the handling of Plaintiffs' claim, including inspections, adjustments, and aiding in the adjustment of the loss for or on behalf of the insurer. TEX. INS. CODE §4001.051.

76.    Separately, and/or in the alternative, as referenced and described above, STATE FARM ratified the actions and conduct of OSPINA including the manner in which he discharged or failed to properly discharge his duties under the common law and applicable statutory laws and regulations.

### BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

77.     Plaintiffs replead all of the material allegations above set forth in Paragraphs 1-76 and incorporate the same herein by this reference as if here set forth in full.

78.     Defendant STATE FARM'S conduct constitutes a breach of the common law duty of good faith and fair dealing owed to insured in insurance contracts.

79.     Defendant STATE FARM'S failure, as described above, to adequately and reasonably investigate and evaluate Plaintiffs' claim, although, at that time, STATE FARM knew or should have known by the exercise of reasonable diligence that its liability was reasonably clear, constitutes a breach of the duty of good faith and fair dealing.

### CAUSES OF ACTION AGAINST ALL DEFENDANTS

80.     Plaintiffs are not making any claims for relief under federal law.

### FRAUD

81.     Plaintiffs replead all of the material allegations above set forth in Paragraphs 1-80 and incorporate the same herein by this reference as if here set forth in full.

82.     Defendants are liable to Plaintiffs for common law fraud.

83.     STATE FARM represented in its Policy that covered Hail and Wind Damages would be insured against loss. Plaintiffs, to their detriment, purchased STATE FARM'S policy in exchange for a benefit STATE FARM knew the Plaintiffs would not receive. Plaintiffs further relied to their detriment upon the false, fraudulent and deceptive acts and practices employed by Defendants, in performing an inspection, investigation and evaluation of Plaintiffs' Storm damages. Plaintiffs are not knowledgeable in the manner and scope required to investigate a storm related loss, nor knowledgeable in insurance loss coverage issues. Defendants, based upon their experience, special knowledge of storm related structural loss issues and insurance coverage issues were able to deceive Plaintiffs into to believing that the property damage loss

would be competently investigated by a qualified, ethical and experienced adjustor and that the loss would be properly, fairly and in good faith evaluated and assessed and the claim paid. Plaintiffs were unaware that all such representations and conduct relating to the investigation and handling of the claim were performed with the intent and purpose to defraud, take advantage of and deny and/or undervalue the Property losses sustained by Plaintiffs. Plaintiffs relied to their detriment on such actions and representations resulting in the losses and damages complained of herein. Plaintiffs have been unable to repair the Storm damages and/or make temporary repairs using Plaintiffs' own limited funds, prolonging Plaintiffs' hardship of living in a storm damaged home. Defendants knew at the time the above misrepresentations and fraudulent conduct occurred that the representations contained in the estimate of loss and communicated to Plaintiffs were false. Each and every one of the representations and deceptive acts and practices, as described above, and those stated in this paragraph, concerned representations and falsehoods concerning material facts for the reason that absent such representations, Plaintiffs would not have acted as they did, and which Defendants knew were false or made recklessly without any knowledge of their truth as a positive assertion.

84.     The statements were made with the intention that they should be acted and relied upon by Plaintiffs, who in turn acted in reliance upon such statements and actions, thereby causing Plaintiffs to suffer injury and constituting common law fraud.

## CONSPIRACY TO COMMIT FRAUD

85.     Plaintiffs replead all of the material allegations above set forth in Paragraphs 1-84 and incorporate the same herein by this reference as if here set forth in full.

86.     Defendants are liable to Plaintiffs for conspiracy to commit fraud. Defendants were members of a combination of two or more persons whose object was to accomplish an

unlawful purpose or a lawful purpose by unlawful means. In reaching a meeting of the minds regarding the course of action to be taken against Plaintiffs, Defendants committed an unlawful, overt act to further the object or course of action. Plaintiffs suffered injury as a proximate result.

## I. KNOWLEDGE

87.     Each of the acts described above, together and singularly, was done "knowingly," as that term is used in the Texas Insurance Code, and was a producing cause of Plaintiffs' damages described herein.

## J. DAMAGES

88.     Plaintiffs would show that all of the aforementioned acts, taken together or singularly, constitute the producing causes of the damages sustained by Plaintiffs.

89.     As previously mentioned, the damages caused by the May 9, 2014 hailstorm and/or windstorm have not been properly addressed or repaired in the months since the Storm, causing further damages to the Property, and causing undue hardship and burden to Plaintiffs. These damages are a direct result of Defendants' mishandling of Plaintiffs' claim in violation of the laws set forth above.

90.     For breach of contract, Plaintiffs are entitled to regain the benefit of their bargain, which is the amount of their claim, together with attorney's fees.

91.     For noncompliance with the Texas Insurance Code, Unfair Settlement Practices, Plaintiffs are entitled to actual damages, which include the loss of the benefits that should have been paid pursuant to the Policy, mental anguish, court costs, and attorney's fees. For knowing conduct of the acts described above, Plaintiffs asks for three times their actual damages. TEX. INS. CODE §541.152.

92.     For noncompliance with the Texas Insurance Code, Prompt Payment of Claims,

Plaintiffs are entitled to the amount of their claim, as well as eighteen (18) percent interest per annum on the amount of such claim as damages, together with attorney's fees. TEX. INS. CODE §542.060.

93.     For breach of the common law duty of good faith and fair dealing, Plaintiffs are entitled to compensatory damages, including all forms of loss resulting from the insurer's breach of duty, such as additional costs, economic hardship, losses due to nonpayment of the amount the insurer owed, exemplary damages, and damages for emotional distress.

94.     For fraud, Plaintiffs are entitled to recover actual damages and exemplary damages for knowingly fraudulent and malicious representations, along with attorney's fees, interest, and court costs.

95.     For the prosecution and collection of this claim, Plaintiffs have been compelled to engage the services of the attorney whose name is subscribed to this pleading.   Therefore, Plaintiffs are entitled to recover a sum for the reasonable and necessary services of Plaintiffs' attorney in the preparation and trial of this action, including any appeals to the Court of Appeals and/or the Supreme Court of Texas.

## K. STATEMENT OF RELIEF AND DAMAGES

96.     As required by Rule 47(b), Texas Rules of Civil Procedure, Plaintiffs' counsel states that the damages sought are in an amount within the jurisdictional limits of this Court. As required by Rule 47(c), Texas Rules of Civil Procedure, Plaintiffs' counsel states that Plaintiffs seek monetary relief, the maximum of which is over $200,000 but not more than $1,000,000. A jury, however, will ultimately determine the amount of monetary relief actually awarded. Plaintiffs also seek pre-judgment and post-judgment interest at the highest legal rate.

## L. RESERVATION OF RIGHTS

97.     Plaintiffs reserve the right to prove the amount of damages at trial.  Plaintiffs reserve the right to amend their petition to add additional counts upon further discovery and as their investigation continues.

## M. JURY DEMAND

98.     Plaintiffs hereby request that all causes of action alleged herein be tried before a jury consisting of citizens residing in Webb County, Texas.   Plaintiffs hereby tender the appropriate jury fee.

## N. WRITTEN DISCOVERY

99.     Attached are Plaintiffs' Interrogatories, Request for Production, and Requests for Disclosure directed to Defendant STATE FARM.

## O. PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs pray that upon trial hereof, said Plaintiffs have and recover such sum as would reasonably and justly compensate them in accordance with the rules of law and procedure, as to actual damages, treble damages under the Texas Insurance Code, and all punitive and exemplary damages as may be found.  In addition, Plaintiffs requests the award of attorney's fees for the trial and any appeal of this case, for all costs of Court on their behalf expended, for pre-judgment and post-judgment interest as allowed by law, and for any other and further relief, either at law or in equity, to which they are justly entitled to.

Respectfully submitted,

PHIPPS, LLP
THE PHIPPS
102 9th Street
San Antonio, Texas 78215
Telephone:     (210) 340-9877
Telecopier:     (210) 340-9899
Email: bfisher@phippsllp.com


BY:___/s/ Martin J. Phipps_____
        MARTIN J. PHIPPS
        State Bar No. 00791444
        BLAYNE FISHER
        State Bar No. 24090099

**ATTORNEYS FOR PLAINTIFFS**

Filed
4/27/2015 4:58:26 PM
Esther Degollado
District Clerk
Webb District
2015CVF001414D2

# CIVIL CASE INFORMATION SHEET

CAUSE NUMBER *(FOR CLERK USE ONLY)*: _____  COURT *(FOR CLERK USE ONLY)*: _____

STYLED **GENARO ESPARZA AND SAN JUANITA ESPARZA V. STATE FARM LLOYDS AND JAY OSPINA**
(e.g., John Smith v. All American Insurance Co; In re Mary Ann Jones; In the Matter of the Estate of George Jackson)

A civil case information sheet must be completed and submitted when an original petition or application is filed to initiate a new civil, family law, probate, or mental health case or when a post-judgment petition for modification or motion for enforcement is filed in a family law case. The information should be the best available at the time of filing.

| 1. Contact information for person completing case information sheet: | | Names of parties in case: | Person or entity completing sheet is: |
|---|---|---|---|
| Name:<br>Blayne Fisher | Email:<br>bfisher@phippsllp.com | Plaintiff(s)/Petitioner(s):<br><br>Genero Esparza<br>San Juanita Esparza<br>___ | ☒Attorney for Plaintiff/Petitioner<br>☐*Pro Se* Plaintiff/Petitioner<br>☐Title IV-D Agency<br>☐Other: ____ |
| Address:<br>102 9th Street | Telephone:<br>(210) 340-9877 | | Additional Parties in Child Support Case: |
| City/State/Zip:<br>San Antonio, Texas 78215 | Fax:<br>Fax: (210) 340-9899 | Defendant(s)/Respondent(s):<br><br>State Farm Lloyds<br>Jay Ospina | Custodial Parent:<br>___ |
| Signature:<br>/s/ Blayne Fisher | State Bar No:<br>24090099 | | Non-Custodial Parent:<br>___<br><br>Presumed Father:<br>___ |
| | | [Attach additional page as necessary to list all parties] | |

**2. Indicate case type, or identify the most important issue in the case *(select only 1)*:**

| Civil | | | Family Law | |
|---|---|---|---|---|
| **Contract** | **Injury or Damage** | **Real Property** | **Marriage Relationship** | **Post-judgment Actions (non-Title IV-D)** |
| *Debt/Contract*<br>☐Consumer/DTPA<br>☐Debt/Contract<br>☐Fraud/Misrepresentation<br>☐Other Debt/Contract:<br>___<br>*Foreclosure*<br>☐Home Equity—Expedited<br>☐Other Foreclosure<br>☐Franchise<br>☒Insurance<br>☐Landlord/Tenant<br>☐Non-Competition<br>☐Partnership<br>☐Other Contract:<br>___ | ☐Assault/Battery<br>☐Construction<br>☐Defamation<br>*Malpractice*<br>☐Accounting<br>☐Legal<br>☐Medical<br>☐Other Professional<br>　Liability: ____<br>☐Motor Vehicle Accident<br>☐Premises<br>*Product Liability*<br>☐Asbestos/Silica<br>☐Other Product Liability<br>　List Product:<br>☐Other Injury or Damage:<br>___ | ☐Eminent Domain/<br>　Condemnation<br>☐Partition<br>☐Quiet Title<br>☐Trespass to Try Title<br>☐Other Property:<br>___<br><br>**Related to Criminal Matters**<br>☐Expunction<br>☐Judgment Nisi<br>☐Non-Disclosure<br>☐Seizure/Forfeiture<br>☐Writ of Habeas Corpus—<br>　Pre-indictment<br>☐Other: ____ | ☐Annulment<br>☐Declare Marriage Void<br>*Divorce*<br>☐With Children<br>☐No Children | ☐Enforcement<br>☐Modification—Custody<br>☐Modification—Other<br>**Title IV-D**<br>☐Enforcement/Modification<br>☐Paternity<br>☐Reciprocals (UIFSA)<br>☐Support Order |
| | | | **Other Family Law**<br>☐Enforce Foreign<br>　Judgment<br>☐Habeas Corpus<br>☐Name Change<br>☐Protective Order<br>☐Removal of Disabilities<br>　of Minority<br>☐Other: ____ | **Parent-Child Relationship**<br>☐Adoption/Adoption with<br>　Termination<br>☐Child Protection<br>☐Child Support<br>☐Custody or Visitation<br>☐Gestational Parenting<br>☐Grandparent Access<br>☐Paternity/Parentage<br>☐Termination of Parental<br>　Rights<br>☐Other Parent-Child:<br>___ |
| **Employment** | **Other Civil** | | | |
| ☐Discrimination<br>☐Retaliation<br>☐Termination<br>☐Workers' Compensation<br>☐Other Employment:<br>___ | ☐Administrative Appeal<br>☐Antitrust/Unfair<br>　Competition<br>☐Code Violations<br>☐Foreign Judgment<br>☐Intellectual Property | ☐Lawyer Discipline<br>☐Perpetuate Testimony<br>☐Securities/Stock<br>☐Tortious Interference<br>☐Other: ____ | | |
| **Tax** | *Probate & Mental Health* | | | |
| ☐Tax Appraisal<br>☐Tax Delinquency<br>☐Other Tax | *Probate/Wills/Intestate Administration*<br>☐Dependent Administration<br>☐Independent Administration<br>☐Other Estate Proceedings | ☐Guardianship—Adult<br>☐Guardianship—Minor<br>☐Mental Health<br>☐Other: ____ | | |

**3. Indicate procedure or remedy, if applicable *(may select more than 1)*:**

| | | |
|---|---|---|
| ☐Appeal from Municipal or Justice Court<br>☐Arbitration-related<br>☐Attachment<br>☐Bill of Review<br>☐Certiorari<br>☐Class Action | ☐Declaratory Judgment<br>☐Garnishment<br>☐Interpleader<br>☐License<br>☐Mandamus<br>☐Post-judgment | ☐Prejudgment Remedy<br>☐Protective Order<br>☐Receiver<br>☐Sequestration<br>☐Temporary Restraining Order/Injunction<br>☐Turnover |

**4. Indicate damages sought *(do not select if it is a family law case)*:**
☐Less than $100,000, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney fees
☐Less than $100,000 and non-monetary relief
☐Over $100, 000 but not more than $200,000
☒Over $200,000 but not more than $1,000,000
☐Over $1,000,000

Rev 2/13

Filed
4/27/2015 4:58:26 PM
Esther Degollado
District Clerk
Webb District
2015CVF001414D2

Esther Degollado
Webb County District Clerk
1110 Victoria St., Suite 203
Laredo, TX  78040
(956) 523-4268

## CIVIL PROCESS REQUEST

**CASE NUMBER:**

**CASE STYLE:** Genaro Esparza and San Juanita Esparza v. State Farm Lloyds and
        Jay Ospina

**TYPE OF INSTRUMENT TO BE SERVED:** Plaintiffs' Original Petition

**FILE DATE OF MOTION:**


**SERVICE TO BE ISSUED ON:**

1.  **NAME:**       State Farm Lloyds

    **AGENT:**    Rendi Black

    **ADDRESS:**   17301 Preston Road
             Dallas, Texas 75252-5727

    **TYPE OF SERVICE/PROCESS TO BE ISSUED:**     Certified Mail

**ATTORNEY REQUESTING SERVICE:**

**NAME:**         Blayne Fisher       **TEXAS BAR NO./ID NO.:**     24090099

**MAILING ADDRESS:**  102 9th Street
             San Antonio, Texas 78215

**PHONE NUMBER:**     (210) 340-9877

**EMAIL ADDRESS:**    bfisher@phippsllp.com, vrios@phippsllp.com

**CONTACT PERSON:**  Valerie Rios

Filed
4/27/2015 4:58:26 PM
Esther Degollado
District Clerk
Webb District
2015CVF001414D2

CAUSE NO. _____

| | | |
|---|---|---|
| **GENARO ESPARZA and** | § | **IN THE DISTRICT COURT** |
| **SAN JUANITA ESPARZA** | § | |
| *Plaintiffs,* | § | |
| | § | |
| **VS.** | § | **___ TH JUDICIAL DISTRICT** |
| | § | |
| **STATE FARM LLOYDS** | § | |
| **and JAY OSPINA** | § | |
| *Defendants.* | § | **WEBB COUNTY, TEXAS** |

### PLAINTIFFS' REQUEST FOR DISCLOSURE TO DEFENDANT
### STATE FARM LLOYDS

TO:     DEFENDANT STATE FARM LLOYDS, by and through its Attorney for Service,

> RENDI BLACK
> C/O STATE FARM
> 17301 Preston Road
> Dallas, Texas 75252-5727

Pursuant to Rule 194 of the Texas Rules of Civil Procedure, Plaintiffs request that the above-named Defendant, State Farm Lloyds (hereinafter referred to as "Defendant"), disclose, within fifty-one (51) days after the date of service of this request, the information or material described in Rule 194.2.

Respectfully submitted,

PHIPPS, LLP
THE PHIPPS
102 9th Street
San Antonio, Texas 78215
Telephone:     (210) 340-9877
Telecopier:     (210) 340-9899

BY:_____
MARTIN J. PHIPPS
State Bar No. 00791444
BLAYNE FISHER
State Bar No. 24090099

**ATTORNEYS FOR PLAINTIFFS**

A True copy of the original I certify
the _____ day of _____ 20 ___
ESTHER DEGOLLADO
Clerk of the District Courts and
County Courts at Law Webb County Texas
By _____ Deputy

Page 1

## CERTIFICATE OF SERVICE

   This is to certify that a true and correct copy of the above and foregoing has been forwarded to the following counsel of record in compliance with the Texas Rules of Civil Procedure on this 27th day of April, 2015:

### *VIA CERTIFIED MAIL:*
RENDI BLACK
C/O STATE FARM
17301 Preston Road
Dallas, Texas 75252-5727


MARTIN J. PHIPPS

Filed
4/27/2015 4:58:26 PM
Esther Degollado
District Clerk
Webb District
2015CVF001414D2

CAUSE NO. _____

| | | |
|---|---|---|
| GENARO ESPARZA and | § | IN THE DISTRICT COURT |
| SAN JUANITA ESPARZA | § | |
| *Plaintiffs,* | § | |
| | § | |
| VS. | § | ___ TH JUDICIAL DISTRICT |
| | § | |
| STATE FARM LLOYDS | § | |
| and JAY OSPINA | § | |
| *Defendants.* | § | WEBB COUNTY, TEXAS |

### PLAINTIFFS' REQUEST FOR PRODUCTION TO DEFENDANT STATE FARM LLOYDS

TO:   DEFENDANT STATE FARM LLOYDS, by and through its Attorney for Service,

RENDI BLACK
C/O STATE FARM
17301 Preston Road
Dallas, Texas 75252-5727

Pursuant to Rule 196 of the Texas Rules of Civil Procedure, Plaintiffs request that the above-named Defendant, State Farm Lloyds (hereinafter referred to as "Defendant"), disclose, within fifty-one (51) days after the date of service of this request, the information or material described in the following request for production.

Respectfully submitted,

PHIPPS, LLP
THE PHIPPS
102 9th Street
San Antonio, Texas 78215
Telephone:    (210) 340-9877
Telecopier:   (210) 340-9899

BY: _____
MARTIN J. PHIPPS
State Bar No. 00791444
BLAYNE FISHER
State Bar No. 24090099
ATTORNEYS FOR PLAINTIFFS

A True copy of the original I certify
the _____ day of _____ 20 ___
ESTHER DEGOLLADO
Clerk of the District Courts and
County Courts at Law Webb County Texas
By _____ Deputy

Page 1

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing has been forwarded to the following counsel of record in compliance with the Texas Rules of Civil Procedure on this 27th day of April, 2015:

### *VIA CERTIFIED MAIL:*
RENDI BLACK
C/O STATE FARM
17301 Preston Road
Dallas, Texas 75252-5727

MARTIN J. PHIPPS

## INSTRUCTIONS

1.  Answer each request for documents separately by listing the documents and by describing them as defined below. If documents are numbered for production, in each response provide both the information that identifies the document and the document's number(s). There is a duty to supplement any answer made to the request for documents when the original answer is no longer true, or was incorrect or incomplete when made.

2.  For each document or other requested information that you assert is privileged or is not discoverable, identify that document or other requested information. State the specific grounds for the claim of privilege or other applicable ground for exclusion. Also, for each document you claim is not discoverable, state the date of the document, the name, job title, and address of the person who prepared it; the name, address and job title of the person to whom it was addressed circulated, or who saw it; the name, job title, and address of the person now in possession of the document; a description of the subject matter of the document; the document's present location; and the custodian for the document.

3.  For a document that no longer exists or cannot be located, identify the document, state how and when it passed out of existence or could no longer be located, and the reasons for the disappearance. Also, identify each person having knowledge about the disposition or loss of the document, and identify any other document evidencing the lost document's existence or any facts about the lost document.

4.  The documents produced pursuant to the following requests for documents are considered to be authentic unless a proper objection is asserted as to the documents' authenticity under the Texas Rules of Civil Procedure.

## DEFINITIONS

The following definitions shall have the following meanings, unless the context of the requests for documents require otherwise:

1.  "PLAINTIFFS" means Genaro Esparza and San Juanita Esparza, along with their family members, agents, representatives, and all other persons acting in concert with them, or under their control, whether directly or indirectly, including any attorney.

2.  "DEFENDANT," means State Farm Lloyds, along with its agents, representatives, and all other persons acting in concert with it, or under its control, whether directly or indirectly, including any attorney.

3.  "DOCUMENT," "DOCUMENTS" and "DOCUMENTATION" are used in their broadest sense and mean all written, printed, typed, recorded, or graphic matter of every kind and description, source and authorship, both originals and all nonidentical copies thereof, and all written, printed, typed, recorded, or graphic matter of every kind and description, both originals and copies, and all attachments and appendices thereto, in your possession, custody or control, or known by you to exist, irrespective of whether the writing is one intended for or transmitted internally by you, or intended for or transmitted to any other person or entity, including without limitation any government agency, department, administrative or private entity or person. Without limiting the foregoing, the terms "document" and "documents" include handwritten, typewritten, printed, photocopied, photographic or recorded, stenographic, computer-generated, computer-installed or electronically stored matters, however and by whomever produced, prepared, reproduced, disseminated or made, and includes communications in words, symbols, pictures, sound recordings, films, tapes and information stored in, or accessible through, computer of other information storage or retrieval systems, together with the codes and/or programming instruction and other materials necessary to understand and use such systems. For purposes of illustration and no limitation, "documents" includes: accounts; advertising; affidavits; agendas; agreements; analyses; analytical records; announcements; appointment books; appraisals; articles; bills; statements and other records of obligations and expenditures; books; brochures; bulletins; calendars; checks; cancelled checks, vouchers, receipts and other records of payments; charts, drawings; check registers; checkbooks; circulars; collateral files and contents; communications; compilations; confirmations; consultant's reports; contracts; corporate by-laws; corporate charters; correspondence; credit files and contents; data compilations from which information can be obtained (including matter used in data processing); deeds of trust; deposit slips, diaries, diary entries; drafts; envelopes; folders or similar containers; expense reports; facsimile transmissions; files; film tape; financial statements; forecasts; graphs; guaranty agreements; instructions, invoices; ledgers, journals, balance sheets, profit and loss statements, and other sources of financial data; letters; letters of credit; lists; log books; logs, notes or memoranda of telephonic or face-to-face conversations; manuals; maps, marginal notations; memoranda of all kinds to and from any persons, agencies or entities; messages; microfilm; microfiche; minutes; minute books; notes; notebooks; notices; pamphlets; parts lists; papers; photographs, press releases; printed

matter (including published books, articles, speeches and newspaper clippings); printouts; programs; punch cards; purchase orders; receipts; recommendations; records; records of administrative, technical and financial actions taken or recommenced; reports; safety deposit boxes and contents and records of entry; schedules; security agreements; sell orders; sound recordings; specifications; speeches; statement of bank accounts; statements, interviews; statistical data; statistical statements, stock transfer ledger; studies; surveys; tables; tabulations; tape or disk recordings; tape programs; technical and engineering reports, evaluations; advice; recommendations; commentaries; conclusions; studies; test plans; manuals; procedures; data; reports; results and conclusions; summaries, minutes, notes and other records and recording of any conference, meetings, visits, negotiations, statement, interviews or telephone conversations; other summaries; telegrams; teletypes, telexes and other communications sent or received; time records; telephone bills or records; trade letters; transcripts of hearings; transcripts of testimony; UCC instruments; video recordings; visitor records; vouchers; work assignments; work sheets; work papers; and all other printed, written, handwritten, typewritten, recorded, stenographic, computer-generated, computer-stored or electronically stored matter, however or by whomever produced, prepared, reproduced, disseminated or made, the contents of which relate to, discuss, consider or otherwise refer to the subject matter of the particular discovery requested.

4.   "PERSON" includes individuals, associates of individuals, partnerships, joint-stock companies, corporations, or trustee or receiver of an individual, association of individuals, joint-stock company or corporation, and any other type of entity or institution, whether formed for business or any other purposes.

5.   "PARTY" shall mean any party whomsoever to the dispute, and includes each party's agents, employees, attorneys, representatives, predecessors, successors, affiliates, partners, officers, directors, principals and any and all other persons acting or purporting to act on the party's behalf or under the party's control. For purposes of the duty to supplement, the term also includes entities, which become parties subsequent to the date this request for documents is served.

6.   "RELATING TO" and or "RELATES TO" means in whole or in part constituting, containing, concerning, embodying, reflecting, describing, analyzing, identifying, stating, referring to, or dealing with, or in any way pertaining to.

7.   "CONCERNING" means, in whole or in part, directly or indirectly, referring to, relating to, connected with, commenting on, responding to, showing, describing, analyzing, reflecting, and constituting.

8.   "COMMUNICATION" means the transmission, sending and/or receipt of information of any kind by or through any means, including but not limited to speech, writings, language (machine, foreign or otherwise), computer electronics of any kind (e.g., email), magnetic tape, videotape, photographs, graphs, symbols, signs, magnetic or optical disks, "floppy disks", CD-ROM disks, sound, radio or video signals, telecommunication, telephone teletype, facsimile, telegraph, microfilm, microfiche, photographic film of any type and

other media of any kind. The term "communication" also includes, without limitations all "records" (as hereafter defined) and all inquiries, discussions, conversations, negotiations, agreements, understandings, meetings, notices, requests, responses, demands, complaints, and press, publicity or trade releases.

9.   "RECORD(S)" means all documents and writings of any kind, and all communications (as defined above) which are stored or retrievable or recorded in any manner, including originals and all non-identical copies whether different from the originals by notation made on such copies or otherwise, all drafts, alterations, modifications, changes and amendments, graphic or any electronic or mechanical records or representation of any kind, created during the period 2000 to present. Any electronic records or computer data which may exist shall be produced in ASCii comma delimited to fixed length filed format and shall include all files, records, instructions, codes or other information necessary to retrieve the data. Electronic data should be produced in Microsoft Access 95 or Microsoft Access 95, 97 or 2000 (MDB) format, Dbase (DBF) format, Excel (xls) format or ASCii comma delimited or fixed length format (txt) and shall include all file, record and field format definitions and the instructions, codes or information necessary to retrieve the data. Such electronic data should be provided on one of the following media. Zip disk, Jaz disk, CD-ROM or 3.5" floppy disk.

10.   "DATE" means the exact date, month, and year, if ascertainable, or, if not, the best available approximation.

11.   "DESCRIBE" and "IDENTIFY", when referring to a person, require statements of the following:

   a.   The full name.
   b.   The present or last known residential address.
   c.   The present or last known residential and office telephone numbers.
   d.   The present occupation, job title, employer, and employer's address at the time of the event or period referred to in each particular request.
   e.   In the case of any person other than an individual, identify the officer, employee, or agent most closely connected with the subject matter of the request and identify the officer who is responsible for supervising that officer or employee.

12.   "DESCRIBE" and "IDENTIFY", when referring to a document, are defined to require that you state the following:

   a.   The nature (e.g., letter, handwritten note) of the document
   b.   The title or heading that appears on the document
   c.   The date of the document and the date of each addendum supplement, or other addition or change.
   d.   The identity of the author and of the signer of the document, and of the person on whose behalf or at whose request or direction the document was prepared or delivered.
   e.   The present location of the document, and the name, address, position, or title, and

telephone number of the person or person having custody of the document.

13. The words "AND" and "OR" should be construed either conjunctively or disjunctively as required by the context to bring within the scope of these discovery requests any answer, response or document that might be deemed outside its scope by another construction.

14. "PERTAINS TO" or "PERTAINING TO" means relates to, refers to, contains, concerns, describes, embodies, mentions, constitutes, supports, corroborates, demonstrates, proves, evidences, shows, reflects, refutes, disputes, rebuts, controverts or contradicts.

15. The term "LAWSUIT" means Cause No. _____; *Genaro Esparza and San Juanita Esparza v. State Farm Lloyds and Jay Ospina*; In the ___ th Judicial District Court of Webb County, Texas.

16. "RESIDENCE" and/or "PROPERTY" refers to the home located at 105 Century Drive E., Laredo, Texas 78046.

## PLAINTIFFS' REQUEST FOR PRODUCTION TO DEFENDANT
## STATE FARM LLOYDS

1.   The insurance policy in effect on the date of Plaintiffs' claim(s).

RESPONSE:

2.   The entire claims investigation files generated and maintained by Defendant in the ordinary course of business pertaining to Plaintiffs' claim(s) making the basis of this lawsuit.

RESPONSE:

3.   All training and educational materials which instruct claims adjusters or claims handlers in handling claims for property damage coverage under homeowners' insurance policies in Texas. This request is limited to the last five (5) years.

RESPONSE:

4.   All training and educational materials which instruct claims adjusters or claims handlers in handling claims for coverage for property damage, hurricane damage, water damage, roof and/or wind damage under homeowners' insurance policies in Texas. This request is limited to the last five (5) years.

RESPONSE:

5.   All procedure or policy manuals or guides meant to guide and assist claims adjusters or claims handlers in handling claims for property damage, including the criteria for and the process for evaluating whether coverage exists under homeowners' insurance policies in Texas. This request is limited to the last five (5) years.

RESPONSE:

6.   All procedure or policy manuals or guides meant to guide and assist claims adjusters or claims handlers in handling claims for property damage, hurricane damage, water damage, roof damages, and/or wind damage to the house, including the criteria, for and the process for, evaluating whether coverage exists under homeowners' insurance policies in Texas. This request is limited to the last five (5) years.

RESPONSE:

7.  All communications and documents, including electronic, between Defendant and Plaintiffs regarding Plaintiffs' claim(s).

RESPONSE:

8.  All communications and documents, including electronic, between Defendant and any third party regarding Plaintiffs' claim(s).

RESPONSE:

9.  All communications and documents, including electronic, between Defendant and any other defendant(s) regarding Plaintiffs' claim(s).

RESPONSE:

10. All communications and documents, including electronic, between Defendant's business departments, including all persons part of the Defendant company, regarding Plaintiffs' claim(s).

RESPONSE:

11. All communications and documents Defendant sent to any other defendant(s) in this cause of action regarding Plaintiffs or the Property, after Plaintiffs made their claim(s) for coverage.

RESPONSE:

12. All photographs, diagrams, drawings, or other graphic depictions of Plaintiffs or the Property made the basis of this Lawsuit.

RESPONSE:

13. Any and all documents, reports, data, emails, notes, photos, videos, manuals, guides, and summaries, regarding the insurance claim(s) made the basis of this lawsuit.

RESPONSE:

14. All reports and other documents from governmental agencies or offices regarding Plaintiffs' Property or containing officially kept information regarding Plaintiffs' Property.

RESPONSE:

15.   Any and all claims files and claim reports, including but not limited to notes, emails, data, photos, videos, manuals, guides, summaries and claim documents, regarding all homeowner insurance claims made by Plaintiffs under their homeowner insurance policy/policies, specifically regarding damage to the exterior and interior of Plaintiffs' Property. This request is limited to the last ten (10) years.

RESPONSE:

16.   Any and all records and/or documents explaining criteria utilized to qualify vendors for the "approved vendors list."

RESPONSE:

17.   Any and all records and/or documents maintained by person(s) responsible for maintaining and updating the "approved vendors list."

RESPONSE:

18.   Any and all records and/or documents maintained by person(s) responsible for creating the criteria utilized to qualify vendors, including contractors and roofing companies, for the "approved vendors list."

RESPONSE:

19.   All documents including reports, estimates, data, emails, testing, sampling, videos, and photographs received by Defendant regarding inspections of Plaintiffs' Property made the basis of this Lawsuit.

RESPONSE:

20.   Any and all records Defendant received, including those obtained by way of deposition by written questions, regarding Plaintiffs' Property made the basis of this Lawsuit.

RESPONSE:

21.   Any and all records or documents Defendant has reviewed and/or obtained regarding Plaintiffs' Property made the basis of this Lawsuit.

RESPONSE:

22.   Any and all claims files Defendant has reviewed and/or obtained regarding Plaintiffs' Property made the basis of this Lawsuit.

RESPONSE:

23.    Any and all records or documents Defendant has reviewed and/or obtained by third parties regarding Plaintiffs' Property made the basis of this Lawsuit.

24.    <u>RESPONSE:</u>

25.    All bulletins or other communications received from the Texas Department of Insurance, the Texas Insurance Commissioner, or their agents, regarding practices in the handling of claims for property damage under homeowner insurance policies in Texas. This request is limited to the last five (5) years.

    <u>RESPONSE:</u>

26.    All bulletins or other communications received from the Texas Department of Insurance, the Texas Insurance Commissioner, or their agents, regarding practices in the handling of claims for property damage, hurricane damage, water damage, hail damage, roof damage, and/or wind damage under homeowner insurance policies in Texas. This request is limited to the last five (5) years.

    <u>RESPONSE:</u>

27.    All materials meant to instruct and guide claims adjusters under Texas law and/or company policy with regard to unfair claims settlement practices, unfair claims handling practices, standards to be met in adjusting or handling first party insurance claims, or avoiding charges of bad faith. This request is limited to the last five (5) years.

    <u>RESPONSE:</u>

28.    All materials meant to instruct and guide claims adjusters under Texas law and/or company policy with regard to understanding and complying with the Texas Insurance Code §541.060 and/or Article 21.21. This request is specifically limited to the last five (5) years.

    <u>RESPONSE:</u>

29.    All materials meant to instruct and guide claims adjusters under Texas law and/or company policy with regard to understanding and complying with the Texas Insurance Code §542.055 *et seq.* and/or Article 21.55. This request is specifically limited to the last five (5) years.

    <u>RESPONSE:</u>

30.     Any and all materials, documents, statements and/or files that demonstrate Defendant's net worth and Defendant's net income. This request is limited to the last five (5) years.

        RESPONSE:

31.     Any and all materials, documents, statements and/or files that reflect complaints and/or lawsuits, filed by insureds against Defendant regarding the handling, review and/or adjusting of homeowner insurance claims in Texas. This request is limited to the last five (5) years.

        RESPONSE:

32.     A copy of each advertisement Defendant has used, published and/or distributed, through any means, in Texas. This request is limited to the last five (5) years.

        RESPONSE:

33.     Any and all materials, handouts, manuals, outlines, articles and/or documents used or relied upon by Defendant to conduct any seminars and/or continuing education classes for Defendant's employees and/or independent adjusters, regarding the adjusting and/or handling of homeowner insurance claims, commercial insurance claims, and property damage claims, hurricane claims, water damage claims, roof damage claims, and/or wind damage claims in Texas. This request is limited to the last five (5) years.

        RESPONSE:

34.     Any and all materials, handouts, manuals, outlines, articles and/or documents issued by Defendant to claims representatives and/or adjusters, or received by claims representatives and/or adjusters, or relied upon by claims representatives and/or adjusters, pertaining to the adjusting and/or handling of homeowner insurance claims, commercial insurance claims, property damage claims, hurricane claims, water damage claims, roof damage claims, and/or wind damage claims in Texas. This request is limited to the last five (5) years.

        RESPONSE:

35.     Any and all reference materials, handouts, manuals, outlines, articles, and/or documents distributed and/or disbursed to Defendant's employer, employees, agents and/or representatives in connection with attendance at seminars and/or continuing education classes regarding the adjusting and/or handling of homeowner insurance claims, commercial insurance claims, and property damage, hurricane claims, water damage, roof damage claims and/or wind damage claims in Texas, within the last five (5) years.

        RESPONSE:

36.     Any and all materials reflecting Defendant's attendance policies for adjusters and claims representatives at seminars and/or continuing education classes regarding the adjusting and/or handling of homeowner insurance claims, commercial insurance claims, property damage claims, hurricane claims, water damage claims, roof damage claims, and/or wind damage claims in Texas. This request is limited to the last five (5) years.

<u>RESPONSE:</u>

37.     Any and all materials, documents, files and/or reports sent to Defendant by its employer, employees, agents, and/or representatives on a monthly, weekly, or daily basis regarding Plaintiffs' claim(s). Include any and all field notes and summaries of the room-by-room scope of Plaintiffs' Property made the basis of this Lawsuit.

<u>RESPONSE:</u>

38.     Any and all materials, documents, files, and/or reports containing list(s) of contractors and/or roofing companies that have been approved and/or recommended for performance of services for Defendant in Texas, specifically related to homeowner insurance claims. This request is limited to the last five (5) years.

<u>RESPONSE:</u>

39.     Any and all computer programs, electronic data, documents, and/or manuals used by the adjusters and claims representatives to perform property damage estimates relating to homeowner insurance claims in Texas, including a complete copy of the computer program used to adjust Plaintiffs' claim(s). This request is limited to the last five (5) years.

<u>RESPONSE:</u>

40.     Any and all reference materials, handouts, manuals, outlines, articles, and/or documents that have been distributed by and/or disbursed to Defendant regarding the price estimates of contractors and changes of those estimates within different geographical areas of the State of Texas. This request is limited to the last five (5) years.

<u>RESPONSE:</u>

41.     Any and all materials, documents, files and/or reports of contractors and roofing companies that have been approved and/or recommended for performance of services for Defendant in Texas. This request is limited to the last five (5) years.

<u>RESPONSE:</u>

42.     Any and all materials, documents, files, invoices, and/or reports of any and all contractors and roofing companies retained to investigate, inspect, and/or evaluate Plaintiffs' claim(s) made the basis of this lawsuit, prepared on behalf of the Defendant.

RESPONSE:

43.     Any and all materials, documents, files, invoices, and/or reports of any and all contractors and roofing companies retained to investigate, inspect, and/or evaluate claims similar in nature to Plaintiffs' claim(s) asserted in this lawsuit, prepared on behalf of Defendant. This request is limited to the State of Texas. This request is limited to the last five (5) years.

RESPONSE:

44.     A complete copy of the entire personnel file(s) of any and all adjusters assigned to Plaintiffs' claim made the basis of this Lawsuit.

RESPONSE:

45.     The most recent address maintained on file for any and all adjusters assigned to Plaintiffs' claim made the basis of this Lawsuit.

RESPONSE:

46.     Any and all documents and/or claim files for persons or entities that have filed property damage, hurricane damage, water damage, roof damage, and/or wind damage claims that have been adjusted by any adjusters and/or adjusting companies on behalf of Defendant.

RESPONSE:

47.     Any and all activity logs relating to Plaintiffs' claim(s) for property damage, hurricane damage, water damage, roof damage, and/or wind damage to their property, specifically the claim(s) made the basis of this suit.

RESPONSE:

48.     Any and all documents reflecting company guidelines, procedures, or policies that serve as criteria for evaluating whether claims are covered or excluded by any policy provisions Defendant contends applied to Plaintiffs' claim(s).

RESPONSE:

49. Any and all organizational charts for Defendant.

   RESPONSE:

50. Any and all organizational charts or diagrams for each department, unit, or section of Defendant to which Plaintiffs' claim(s) was assigned. This request is limited to the last five (5) years.

   RESPONSE:

51. Any and all charts or diagrams reflecting the chain of command or supervisory hierarchy relating to each person involved in handling Plaintiffs' claim(s).

   RESPONSE:

52. Any and all claims and underwriting files for each claim involving property damage, hurricane damage, water damage, roof damage, and/or wind damage made against Defendant, investigated by any and all adjusters assigned to Plaintiffs' claim made the basis of this Lawsuit in Texas. This request is limited to the last five (5) years.

   RESPONSE:

53. Any and all demand letters received by Defendant after the handling of a claim involving property damage, hurricane damage, water damage, roof damage, and/or wind damage that was adjusted by any and all adjusters assigned to Plaintiffs' claim made the basis of this Lawsuit. This request is limited to the last five (5) years.

   RESPONSE:

54. Any and all documents reflecting or relating to Defendant's decision to pay or deny additional expenses to or on behalf of Plaintiffs in this case.

   RESPONSE:

55. Any and all records reflecting payment to Plaintiffs concerning Plaintiffs' claim(s) made the basis of this suit.

   RESPONSE:

56. Any and all documents, including correspondence and checks, exchanged between Defendant and any and all vendors concerning Plaintiffs' claim(s).

   RESPONSE:

57.     Any and all documents relating to or reflecting any and all adjusters assigned to Plaintiffs' claim made the basis of this Lawsuit, from the time of hiring through the present.

        RESPONSE:

58.     Any and all documents relating to the assignment of Plaintiffs' claim(s) to any and all adjusters assigned to Plaintiffs' claim made the basis of this Lawsuit, from the time of hiring through the present.

        RESPONSE:

59.     Any and all documents relating to or reflecting referrals of vendors to Plaintiffs or any insured.

        RESPONSE:

60.     If you are withholding documents based upon the assertion of a privilege, please produce a privilege log, detailing with reasonable particularity a description of the documents withheld, the number of documents, and the applicable privilege which Defendant claims properly precludes the information discovery.

        RESPONSE:

61.     Any and all advanced or specialized certifications of personnel who inspected, investigated, and/or supervised the adjusting of the claim(s) pertaining to the Property made the basis of this Lawsuit.

        RESPONSE:

62.     Any and all documents, including contracts, rules, guidelines and/or instructions exchanged between Defendant, Plaintiff, and any and all adjusters assigned to Plaintiffs' claim made the basis of this Lawsuit, from the time of hiring through the present, and any other entities with whom Defendant worked or communicated regarding the Property made the basis of this Lawsuit.

        RESPONSE:

63.     All physical or tangible items and/or potentially usable evidence obtained by, or on behalf of, Defendant from the scene of the occurrence made the basis of this suit.

        RESPONSE:

64.    Any and all indemnity agreements between Defendant and any other person, firm, or corporation against which a claim of indemnification might be brought because of the facts in this lawsuit.

RESPONSE:

65.    Any and all complaint policies and procedures regarding the handling by Defendant of complaints made by homeowner insureds. This request is limited to the last five (5) years.

RESPONSE:

66.    Copies of all job descriptions of employees that adjusted or in any way supervised the handling of Plaintiffs' claim(s).

RESPONSE:

67.    All non-privileged e-mails regarding the investigation, adjusting, and/or handling of the claim(s) made the basis of this suit.

RESPONSE:

68.    All e-mails between Defendant's adjusters, agents, supervisors, officers, and/or executives regarding changes in the educational programs relating to the handling of property damage, hurricane damage, water damage, and/or roof damage claims.

RESPONSE:

69.    All computer files, databases, electronically-stored information or computer-stored information regarding property damage, hurricane damage, water damage and/or roof damage that have been compiled, prepared, and/or supervised by Defendant, whether or not they are in Defendant's possession or in the possession of another entity.

RESPONSE:

70.    True and complete copies of all billing records from any and all independent adjusters regarding the claim(s) made the basis of this lawsuit.

RESPONSE:

71.    True and complete copy of activity logs filed by the staff and independent adjusters on the file.

RESPONSE:

72.   Any and all reports, documents, or correspondence containing the names and locations of all adjusters who have worked on this file to the present.

RESPONSE:

73.   True and complete copies of all billings on the file from the independent adjusters, including the time sheets or documentation used to justify the billings.

RESPONSE:

74.   Any and all reports, documents or correspondence reflecting the reserving and payment history of indemnity, expenses, and vendors on this file including but not limited to dates, changes and requests made by the adjusters. This request is limited to the last five (5) years.

RESPONSE:

75.   Any and all correspondence and lawsuits involving vendors, staff or management involved with property claims, property damage, hurricane damage, water damage, roof damage, and/or wind damage claims from 2000 to present.

RESPONSE:

76.   Any and all correspondence and lawsuits concerning the issues of honesty, conflict of interest, criminal actions, past criminal record, criminal conduct, fraud investigation and/or inappropriate behavior of any person associated with the handling of claims files, management of property damage, water damage, roof damage and/or wind damage claims, including staff and vendors.

RESPONSE:

77.   Any and all answers made in previous discovery requests for lists or databases of property damage, hurricane damage, water damage, roof damage and/or wind damage.

RESPONSE:

78.   Any and all answers and affidavits made by Defendant and its counsel in previous discovery requests for training procedures, and training manuals for property damage, hurricane damage, water damage, roof damage, and/or wind damage claims.

RESPONSE:

79.    Any and all reports, documents or correspondence reflecting the history of payment and reserves on this file.

      RESPONSE:

80.    Any and all reports, documents or correspondence containing names of designated individuals who gave testimony as Person Most Knowledgeable for claims, property damage, hurricane damage, catastrophe, water damage, roof damage, and/or wind damage claims for 2000 through the present. List of the lawsuits where testimony was given.

      RESPONSE:

81.    Any and all training manuals used by vendors to train their adjusters on property damage, hurricane damage, water damage, roof damage, and/or wind damage for Defendants. This request is limited to the last five (5) years.

      RESPONSE:

82.    Any and all correspondence from Defendant to and from vendors regarding any instructions, procedures, changes, training, payments, and billing for property damage, hurricane, flood, and catastrophe claims for 2000 through the present, including but not limited to computer disks, e-mails, paperwork, and manuals.

      RESPONSE:

83.    Any and all correspondence concerning issues with billing and claims handling with vendors, and/or independent adjusting companies. This request is limited to the last five (5) years.

      RESPONSE:

84.    Any and all demand letters, lawsuits and/or subrogation claims filed against any vendors, or by any vendors against Defendant. This request is limited to the last five (5) years.

      RESPONSE:

85.     Any and all reports, documents or correspondence containing lists of attendees, dates, and locations of all meetings conducted by Defendant for all independent adjusters and Defendant's staff for property damage, Hurricane Ike, Hurricane Rita, Hurricane Dolly, Tropical Storm Allison, flood damage, claims, wind damage claims, water damage claims, and/or roof damage claims training. This request is limited to the last five (5) years.

        RESPONSE:

86.     Any and all reports, documents or correspondence containing lists of files with written complaints or DOI complaints on property damage, hurricane damage, wind damage, water damage, and/or roof damage claims previously gathered and produced in other TDI complaints or lawsuits. This request is limited to the last five (5) years.

        RESPONSE:

87.     Any and all reports, documents or correspondence containing lists of all lawsuits or disputes filed against Defendant or its entities or affiliates nationwide containing an element of property damage, hurricane damage, water damage, roof damage, and/or wind damage for 2000 through the present.

        RESPONSE:

88.     Any and all reports, documents or correspondence containing lawsuits where lists of all suits filed against Defendant or its entities or affiliates nationwide containing an element of property damage, hurricane damage, water damage, roof and/or wind damage or dispute for 2000 through the present were previously produced.

        RESPONSE:

89.     Copies of the front and back of each negotiated check made payable solely or co-payable to Plaintiffs under the insurance policy in effect during the time of the insurance claim made the basis of this lawsuit, and which was issued by Defendant.

        RESPONSE:

90.     Copies of the front and back of each negotiated check made payable solely or co-payable to Plaintiffs regarding the insurance claim made the basis of this lawsuit.

        RESPONSE:

91.   Studies commissioned by Defendant, including any done by a law firm to analyze their claim management strategies, and/or to help them improve corporate profits.

RESPONSE:

92.   Affidavits or depositions of the employee(s) who handled Plaintiffs' claim(s), or their supervisors, in other cases involving the same or similar allegations in this case.

RESPONSE:

93.   The entire underwriter's file for underwriting the insurance policy made the basis of this lawsuit.

RESPONSE:

94.   All notes, reports, documents, or applications created and/or generated by Defendant's underwriting department relating to the insurance policy made the basis of this lawsuit.

RESPONSE:

95.   All documents and communications, including electronic, between Defendant and any engineer(s) or engineering company(s), used to evaluate Plaintiffs' claim(s), or other person(s) used in handling Plaintiffs' claim(s), in the last five years regarding, in any way, the investigation of a residence, commercial building or church, involving damages to the structure or its contents.

RESPONSE: